UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Board of Trustees of the Teamsters Joint Council 32 - Employers Health and Welfare Fund,<br><br>Plaintiff,<br><br>v.<br><br>H. Brooks and Company LLC, *d/b/a* H. Brooks and Company; and Jason Jaynes, *as Manager of H. Brooks and Company LLC, in his personal capacity*;<br><br>Defendants. | Case No. 21-cv-1455 (KMM/DJF)<br><br>**ORDER** |

This matter is before the Court on the Motion for Contempt filed by the Plaintiff, Board of Trustees of the Teamsters Joint Council 32 - Employers Health and Welfare Fund (the "Fund"). [ECF No. 19]. Specifically, the Fund seeks an order finding Defendant H. Brooks and Company LLC ("H. Brooks") in contempt of Court for failing to comply with the Court's Default Judgment Order. As a contempt sanction, the Fund asks the Court to Order H. Brooks to pay $200.00 to the Fund for every day that it continues to fail to provide information as required by the Default Judgment Order and an award of attorney's fees and costs incurred in bringing the motion for contempt. [ECF No. 19; *see also* Proposed Order, ECF No. 23; Default J. Order, ECF No. 16]. The Fund's motion is granted as stated in the following Order.

1

**I.      Background**

The Fund filed this lawsuit against H. Brooks and its Manager, Jason Jaynes, on June 22, 2021. The Fund alleged that H. Brooks was signatory to a collective bargaining agreement ("CBA") that required it to make contributions to the Fund on behalf of eligible union member employees, and Mr. Jaynes was responsible for and had control over remitting those contributions. However, H. Brooks failed to make any contributions after January 2021. As a result, the Fund claimed it was contractually entitled to review H. Brooks' books and records to conduct an audit of the business and to recover unpaid contributions.

The Fund personally served H. Brooks and Mr. Jaynes with a copy of the Summons and Complaint on June 29, 2021, [ECF Nos. 4 & 5], and neither Defendant filed an Answer or otherwise responded within the time allowed by the Federal Rules of Civil Procedure. The Fund applied for, and the Clerk of Court entered, default against the Defendants, and on November 9, 2021, United States District Judge John R. Tunheim granted the Fund's Motion for Default Judgment. [Default J. Order, ECF No. 16].

The Default Judgment Order declared that H. Brooks was liable for delinquent contributions, interest, and liquidated damages and for the Fund's reasonable attorney fees, audit costs, and costs incurred in pursuing the delinquent contributions. Further, it declared that Mr. Jaynes is jointly and severally liable to the Fund for withheld employee contributions, interest, and liquidated damages as well as the Fund's attorney's fees. Judge Tunheim required H. Brooks to submit its payroll books and records from January 2021 through the date of the Order, or the date on which it could show that it no longer had any

2

employees who were covered by the CBA. These records were required to be produced to the Fund's third-party administrator within 10 days of the date it was served with a copy of the Default Judgment Order. Finally, once the Fund had completed its audit, the Default Judgment Order allowed the Fund to make a motion for a money judgment in the amount the Fund determined that Defendants owe in delinquent contributions, liquidated damages, audit costs, and reasonable attorney's fees. The Clerk entered Judgment on November 17, 2021. [ECF No. 17].

On July 8, 2022, the Fund filed its Motion for Contempt. In support of the contempt motion, the Fund has shown that it attempted to personally serve the Default Judgment Order on Defendants and to serve them by mail, but its efforts were unsuccessful. The Fund's process server could not personally serve H. Brooks at its registered office address on file with the Minnesota Secretary of State because the office was vacant. [ECF No. 22-2]. The Fund's attempts to send mail to the registered office address for H. Brooks was returned with the label: "unable to forward." [ECF No. 22 ¶ 7]. The Fund also attempted to personally serve Mr. Jaynes at a different business, Got Game Golf LLC, where he is listed as a Manager by the Minnesota Secretary of State. [ECF No. 22 ¶ 6]. The Fund's process server went to that company's offices on December 22, 2021, and was told that Mr. Jaynes "is in and out" of the office "and was not in" that day. [ECF No. 22-3]. The process server tried again on December 27, 2021, with the same result. [*Id.*].

Because H. Brooks is a limited liability company subject to substitute service through the Minnesota Secretary of State under Minn. Stat. § 322C.0116, subd. 2, and Minn. Stat. § 5.25, subd. 3, and the Fund was unable to serve any agent, manager, officer,

3

or general partner at the company's registered office, the Fund attempted substitute service. [ECF No. 22 ¶¶ 8–9]. The Minnesota Secretary of State provided the Fund with a Service of Process Acknowledgment dated April 18, 2022. [ECF No 22-4]. Despite these efforts "[n]o one from H. Brooks . . . contacted Plaintiff, its attorney Jane C. Poole, or its third-party administrator Wilson-McShane Corporation at any time in this case." [ECF No. 22 ¶ 10].

The Court issued an Order to Show Cause on July 18, 2022. [ECF No. 24]. The Fund was required to make additional reasonable efforts to serve the Default Judgment Order, the Motion for Contempt, and the Order to Show Cause on H. Brooks. Among the steps the Court instructed the Fund to take were, potentially, additional attempts to locate and personally serve those documents on Mr. Jaynes. H. Brooks was required to file any written response to the Order to Show Cause explaining why it should not be held in contempt of Court for failure to comply with the Default Judgment Order. And the Court scheduled an in-person show-cause hearing for September 14, 2022, requiring H. Brooks to appear at the hearing through a representative of the business or through counsel.

Following the Order to Show Cause, the Fund filed a Certificate of Service, noting that a Deputy Sheriff from the Hennepin County Sheriff's Office had personally served Mr. Jaynes with copies of the Default Judgment Order, Judgment, the Fund's contempt motion and supporting documents, and the Order to Show Cause. [ECF No. 25]. On September 14, 2022, the Court held the show-cause hearing. The Fund appeared through counsel, but no appearance was made on behalf of H. Brooks and Mr. Jaynes did not appear. [ECF No. 26]. To date, neither H. Brooks nor Mr. Jaynes has participated in this

4

proceeding in any way, nor indicated that any efforts have been made at complying with the Judgment.

## II. Legal Standard

A party's failure to perform a specific act required by a judgment may result in that party being held in contempt of court. Fed. R. Civ. P. 70(a), (e). The party requesting an order of contempt bears the burden of showing, by clear and convincing evidence, a violation of a court order. *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). If the court determines that a party is in contempt, sanctions may be imposed to coerce a party into compliance with the court's order, to compensate the alleged contemnor's opponent, or both. *Id.* at 505; *Paisley Park Enters., Inc. v. Boxill*, 299 F. Supp. 3d 1074, 1089 (D. Minn. 2017) (same). "A federal district court has 'broad discretion to design a remedy.'" *Allied Med. Training, LLC v. Knowledge2SaveLives, LLC*, File No. 19-cv-3067 (ECT/KMM), 2020 WL 6269196, at *2 (D. Minn. Oct. 26, 2020) (quoting *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 912 (D. Minn. 2007)).

To carry its burden to demonstrate contempt, the moving party must show that "(1) a valid order existed, (2) the party had knowledge of the order, and (3) the party disobeyed the order." *United States v. Thornton*, No. 13-mc-87 (SRN/TNL), 2015 WL 1522245, at *2 (D. Minn. Mar. 27, 2015). The order at issue must also be specific enough to be enforceable. *Allied Med. Training*, 2020 WL 6269196, at *2; *accord Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006) ("A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order.") (quotation omitted). The moving party does not need to show that the noncompliance was willful.

5

*Allied Med. Training*, 2020 WL 6269196, at *2. If the moving party satisfies this burden, then the burden shifts to the alleged contemnor to show a present inability to comply with the order in question. *Chicago Truck Drivers*, 207 F.3d at 505. To satisfy that burden, the alleged contemnor must show "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply." *United States v. Santee Sioux Tribe*, 254 F.3d 728, 736 (8th Cir. 2001) (quoting *Chicago Truck Drivers*, 207 F.3d at 506)).

### III. Discussion

The Fund's motion seeks a finding of contempt, imposition of a daily fine, and entry of an order requiring payment of attorney's fees. Because each of these requests is supported by the facts and the law, the Fund's motion is granted in most respects.

#### A. Contempt Finding

The Court has little difficulty finding that the Fund has met its burden to demonstrate that H. Brooks is in civil contempt. First, a valid order exists. If the original notice was not properly served, a default may be invalid because the Court never would have obtained personal jurisdiction over the Defendants. *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). Here, the Default Judgment Order suffers no such infirmity. Before Judge Tunheim entered the Order, the Fund's process server personally served the Summons and Complaint on H. Brooks by handing a copy of each to Mr. Jaynes, and neither Defendant answered, nor otherwise responded in the time allowed by law.

[Default J. Order at 1–2 (citing ECF Nos. 4–5)]. Nothing in the record calls into question the validity of such service, nor the Default Judgment Order.

Second, the Fund has provided clear and convincing evidence that H. Brooks received actual notice of the Default Judgment Order. When the Fund initially filed its motion for contempt, the Court had some concerns about the substitute method of service through the Minnesota Secretary of State used by the Fund. The Court's concern was two-fold: (1) it was unclear whether such service could be legally effective under the circumstances; and (2) it was unclear whether such service would have resulted in actual notice. Following the Court's Order to Show Cause, but prior to the show-cause hearing, the Fund engaged the Hennepin County Sheriff's Office to personally deliver a copy of the Default Judgment Order (along with the motion for contempt and its supporting documents) to Mr. Jaynes.[1] *See Allied Med. Training*, 2020 WL 6269196, at *2 (concluding that a "recently filed affidavit of service makes it even easier to conclude that [the individual defendant] is aware both of the order and of the present contempt motion").

And third, the Court finds that the Default Judgment Order clearly and specifically required H. Brooks to provide information to the Fund and H. Brooks disobeyed the Order. The Default Judgment Order established a straightforward two-step process for making the Fund whole: first, H. Brooks would submit to an audit procedure, and second, the Fund could file a motion for a money judgment based on the results of that audit. That process never got off the ground because of H. Brooks' contempt. The record clearly and

---

[1] ECF No. 25.

convincingly shows that H. Brooks never "submit[ted] its payroll books and records for the period from January 2021 to the [date of the Default Judgment Order], or the date on which it can show it no longer employed employees covered by the CBA" to the Fund's third-party administrator. [Default J. Order at 5 ¶¶ 2–3; ECF No. 22 ¶ 10]. At the very brief show-cause hearing, counsel for the Fund confirmed that although she had heard from an attorney who indicated he represented Mr. Jaynes individually, that attorney never entered a notice of appearance, and counsel for the Fund never received any information from Mr. Jaynes or H. Brooks to satisfy the requirements of the Default Judgment Order. Accordingly, the Fund has met its burden to show, and the Court finds, that H. Brooks is in contempt.[2]

Because the Fund met its burden to show that H. Brooks is in contempt, the burden shifts to H. Brooks to demonstrate, in detail, that it was unable to comply with the Default Judgment Order, that its inability was not self-induced, and that in good faith, it made reasonable efforts to comply. H. Brooks has not met this burden. Indeed, by failing to appear at all, it has made no showing with respect to the reasons for non-compliance. There

---

[2] In the Fund's Motion for Contempt, it asked "for an Order holding *Defendants* in civil contempt." [ECF No. 19 (emphasis added)]. But the Fund's Memorandum of Law in Support of Motion for Contempt did not make any specific argument with respect to a finding of contempt against Mr. Jaynes personally. [ECF No. 21]. And the Fund's Proposed Order on Motion for Contempt sought findings of contempt and a daily fine with respect to H. Brooks alone. [ECF No. 23]. Based on this record, the Court has focused on the Fund's request for a finding of contempt and a sanction with respect to H. Brooks and Company LLC.

8

is nothing in the record to suggest that even if, as appears likely,[3] H. Brooks is no longer active, it would be unable to provide payroll books and records that would allow the Fund to conduct its audit. Consequently, the Court sees no basis to make a finding that H. Brooks has an inability to comply with the Default Judgment Order's provisions requiring it to turn over its payroll books and records. *See Edeh v. Carruthers*, Civil No. 10-2860 (RJK/JSM), 2011 WL 4808194, at *3 (D. Minn. Sept. 20, 2011) (finding that where the defendant "made no appearance in connection with the [relevant court orders] and has had no communication with the Court or plaintiff, no evidence ha[d] been presented to establish any of the grounds for 'present inability' to comply"), *R&R adopted by* 2011 WL 4808191 (D. Minn. Oct. 11, 2011).

### B. Sanctions

Having found that H. Brooks is in contempt and that H. Brooks has failed to meet its burden to show a present inability to comply, the Court turns to the Fund's request for contempt sanctions. Here, the Fund asks the Court to impose a fine on H. Brooks of $200.00 per day, payable to the Fund, until it complies with the Default Judgment Order's provisions requiring it to turn over audit information, and separately, an Order requiring payment of the Fund's attorney's fees and expenses incurred in bringing the motion for contempt.

---

[3] The website for the Minnesota Secretary of State lists H. Brooks' status as "inactive." Office of the Minnesota Secretary of State Steve Simon, Business Record Details, https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=0cf0094c-abd4-e011-a886-001ec94ffe7f.

*Coercive Sanction*

First the court addresses the Fund's request for imposition of a daily fine. A fine to coerce compliance with a court order is, indeed, an appropriate use of civil contempt sanctions. *Chicago Truck Drivers*, 207 F.3d at 505. The Court "has broad discretion to design a remedy that will bring about compliance," which includes coercive fines. *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 913 (D. Minn. 2007) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys.*, 369 F.3d 645, 657 (2d Cir. 2004)).

> When imposing a civil contempt sanction, the following four factors must be assessed: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order.

*Edeh*, 2011 WL 4808194, at *3 (citing *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947)). Any sanction for civil contempt must not be punitive. *United States v. Hefti*, 879 F.2d 311, 315 (8th Cir. 1989) ("It is an elementary rule that in civil contempt the sanctions are coercive (to encourage compliance), not punitive."); *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 823 (D.C. Cir. 2009) ("[C]ivil contempt sanctions may not be punitive—they must be calibrated to coerce compliance or compensate a complainant for losses sustained.").

Except in one respect, the Court grants the Fund's request for a contempt sanction of a daily fine against H. Brooks until it comes into compliance with the Default Judgment Order's requirements. Because the purpose of this sanction is to coerce compliance with

the Order that H. Brooks has failed to obey, "the sanction should be payable to the court, rather than to the opposing party." *Chaganti*, 470 F.3d at 1224. With that minor adjustment, the relevant factors weigh in favor of imposing a sanction.

The harm caused by H. Brooks' noncompliance here "is both monetary and prejudicial to the timely resolution of this case." *Bricklayers & Allied Craftworkers Serv. Corp. v. Archithority United L.L.C.*, Case No. 19-cv-2588 (MJD/ECW), 2020 WL 7249860, at *13 (D. Minn. Nov. 3, 2020), *R&R adopted by*, 2020 WL 6938626 (D. Minn. Nov. 25, 2020). Specifically, until H. Brooks provides its payroll books and records to the Fund, the Fund cannot conduct its audit to determine what it is owed, and consequently, cannot move for a money judgment to bring this matter to a close. H. Brooks' disobedience of the Default Judgment Order means that "no one knows the full extent of the harm because Defendants have not provided the information that will allow the auditor to calculate what Defendants owe. This in itself is harmful to [the Fund] and the affected employees." *Bricklayers*, 2020 WL 7249860, at *14. This factor weighs heavily in favor of imposing a monetary sanction in this case to achieve compliance with the Default Judgment Order.

Admittedly, it is difficult on this record to predict the probable effectiveness of the requested sanction in coercing H. Brooks to turn over its books and records as required by the Default Judgment Order. The record suggests that H. Brooks' registered office was vacant in July. [ECF No. 21 at 2; ECF No. 22 ¶¶ 5–7, Exs. 1–2]. As noted, H. Brooks is not listed an active business according to the Minnesota Secretary of State's public website. Thus, it is certainly possible that imposition of a daily fine against H. Brooks may not have

the practical effect of getting the Fund the records it needs to conduct the audit it is entitled to carry out. However, the record here does not clearly demonstrate that any monetary sanction would be futile, and the Court notes that in similar ERISA cases with defaulting defendants, courts have imposed sanctions comparable to those requested here. *E.g.*, *Greater St. Louis Constr. Laborers Welfare Fund v. J L Brown Contracting Serv., Inc.*, Case No. 4:15-CV-960-CEJ, 2016 WL 5076189, at *1, 3 (E.D. Mo. Sept. 20, 2016) (imposing fine of $200 per day for each day of noncompliance on a defaulting employer who failed to provide books and payroll records needed for an accounting to determine the amount of delinquent contributions). This factor ultimately weighs slightly in favor of imposing a monetary sanction.

Turning to the financial resources of the contemnor and the burden that the sanctions may impose, again the record is somewhat lacking. On the one hand, it is possible that because H. Brooks no longer has much of a meaningful commercial presence, it lacks the financial resources to pay any fine. This might, in turn, mean that the imposition of a monetary sanction will not have the intended effect of bringing H. Brooks into compliance with the Default Judgment Order. On the other hand, H. Brooks has provided no information in this proceeding, neither to the Fund, nor to the Court, regarding its financial situation. Under these circumstances, the Court considers this factor to be neutral as to a monetary sanction. *Bricklayers*, 2020 WL 7249860, at*16; *Paisley Park Enter., Inc. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 2019 WL 2710703, at *4 (D. Minn. June 28, 2019) (concluding that "this factor does not weigh for or against a contempt citation" where the

record contained no information regarding the contemnors' financial resources), *R&R adopted*, No. 17-cv-1212 (WMW/TNL), 2019 WL 4080782 (D. Minn. Aug. 29, 2019).

Finally, with regard to the fourth factor of willfulness, H. Brooks received actual notice of the Default Judgment Order, the contempt motion, and the July 18, 2022 Order to Show Cause through personal service on Mr. Jaynes. But there is no evidence in the record indicating that H. Brooks has taken any steps toward complying with the Default Judgment Order. As a result, the record supports a finding that H. Brooks' disregard of that Order is willful. *See Bricklayers*, 2020 WL 7249860, at *16 ("The Court need not determine whether Defendants are attempting to evade their obligation under the collective bargaining agreement to address this factor. It is enough that Defendants have been aware of the [order] and their obligations pursuant to that order for months now, have not complied with [it], and only took preliminary steps toward compliance after the Court set [a show-cause hearing]."). This factor weighs in favor of imposing a monetary sanction.

Weighing all of the relevant factors, the Court finds that imposition of the requested $200 daily fine for each day of H. Brooks' continued noncompliance is an appropriate monetary sanction for its contempt of the Default Judgment Order. The Court will delay the effective date of this sanction for two weeks after the Order is entered to allow H. Brooks one last opportunity to comply before incurring the fines. *See J L Brown Contracting Serv.*, 2016 WL 5076189, at *3 (similarly delaying the effective date of the monetary sanction). Moreover, the Court notes that H. Brooks can purge this sanction and cease accruing the daily fine by taking what appears to be the relatively simple step of

turning over the payroll books and records it was ordered to provide to the Fund's third-party administrator over a year ago.

### *Compensatory Sanction*

Finally, the Court Fund seeks an Order requiring H. Brooks to pay the Fund's attorney's fees and costs incurred in bringing its contempt motion. Civil contempt sanctions, such as an award of attorney's fees, may be imposed to compensate a complainant for its losses that are caused by the contemnor's conduct. *Chicago Truck Drivers*, 207 F.3d at 505. While a contempt sanction intended to coerce compliance with an order should be payable to the court, a "compensatory sanction, on the other hand, may be paid to the complainant when the amount is based on evidence of the losses it sustained." *World Wrestling Ent., Inc. v. AWA Wrestling Ent., Inc.*, Case No. 07-cv-2058 (ADM/KMM), 2019 WL 2393062, at *1 (D. Minn. Apr. 12, 2019), *R&R adopted*, 2019 WL 2393009 (D. Minn. Apr. 30, 2019).

The Court concludes that compensatory sanctions are appropriate. The Fund has expended resources on seeking H. Brooks' compliance with the Default Judgment Order through its motion for contempt, its additional and successful efforts at personal service on Mr. Jaynes, and its counsel's attendance at the September 14, 2022 show-cause hearing. But for H. Brooks' contempt, none of those steps would have been required. Accordingly, the Fund may submit a declaration showing the claimed amount of attorney's fees and costs to the undersigned within ten days of the date of this Order.

**IV.    Order**

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff Board of Trustees of the Teamsters Joint Council 32 - Employers Health and Welfare Fund's Motion for Contempt [ECF No. 19] is **GRANTED** as follows:

1. Defendant H. Brooks and Company LLC is held in contempt of the authority of this Court for its failure to comply with the November 9, 2021 Order on Motion for Default Judgment as discussed herein.

2. Defendant H. Brooks and Company LLC shall pay to the Clerk of Court a fine in the amount of $200.00 per day, beginning fourteen days after the date of this Order, and continuing thereafter until H. Brooks and Company LLC satisfies the Court in writing that it is no longer in contempt.

3. Defendant H. Brooks and Company LLC shall pay the Plaintiff's reasonable attorney's fees and costs incurred in bringing its motion for contempt. Counsel for Plaintiff may submit a declaration showing the claimed amount of attorney's fees and costs to the undersigned within ten days of the date of this Order.

4. Plaintiff shall serve a copy of this Order on Defendants by any means reasonably likely to apprise Defendants of its existence.

Date: December 1, 2022

                                             *s/Katherine Menendez*
                                             Katherine Menendez
                                             United States District Judge